Court of Appeals No. 24-13140

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

Brittany Finney,
*Appellant, Plaintiff*

v.

Metropolitan Life Insurance Company,
*Appellee, Defendant*

_____

On Appeal from the United States District Court
for the Northern District of Alabama
Case No. 1:22-cv-01046-CLM

_____

## APPELLANT'S OPENING BRIEF

_____

M. Clayborn Williams
THE MARTIN LAW GROUP, LLC
2117 Jack Warner Parkway
Suite 1
Tuscaloosa, AL 35401
Phone:  (205) 343-1771
Facsimile:  (205) 343-1781
clay@erisacase.com

**No. 24-13140**

**Brittany Finney v. Metropolitan Life Insurance Company**

**CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to 11th Cir. R. 26.1, Plaintiff-Appellant hereby certifies that Plaintiff-Appellant, being a individual, is not a not-for-profit charitable corporation and that no publicly held corporation owns 10% or more of Plaintiff's stock. Plaintiff also certifies that the following is a complete list of the trial judge and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case on appeal.

Bradley Arant Boult Cummings LLP

Finney, Brittany

Martin Law Group, LLC

Martin, David P.

Maze, Judge Corey L.

MetLife, Inc (MET)

Metropolitan Life Insurance Company

Miller, Matthew T.

Smith, Scott Burnett

United States Office of Personnel Management

Williams, M. Clayborn

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant respectfully submits that oral argument is unnecessary given the nature of the issues presented in this appeal, which does not involve any issues of first impression, but instead involves a question whether the district court's holding below is contrary to, or inconsistent with, existing Eleventh Circuit precedent.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ...... C-1

Statement Regarding Oral Argument ............................................................. i

Table of Contents ......................................................................................... ii

Table of Citations ......................................................................................... iv

Jurisdictional Statement ............................................................................... vi

Statement of the Issues .................................................................................. 1

Statement of the Case ................................................................................... 2

Summary of the Argument ........................................................................... 11

Argument ..................................................................................................... 12

       The district court's affirmation of Metlife's interpretation
       of coverage terms as precluding the recovery of accidental
       death benefits when the insured has pre-existing health
       conditions is contrary to the federal common law of
       Eleventh Circuit law ............................................................................. 12

       A. Under Eleventh Circuit law, a pre-existing health
          condition or infirmity cannot be considered as an
          alternative cause under the policy language at issue
          unless unless it "substantially contributed" to the
          policyholder's death ....................................................................... 13

       B. MetLife's interpretation of FEGLI policy terms in
          a manner contrary to federal common law necessarily is
          an abuse of discretion .................................................................... 19

C. Contrary to the district court's alternative holding, the claim record does not support an inference that any of Ms. Anderson's underlying health conditions "substantially contributed" to her death .................................. 21

Conclusion ..................................................................... 25

Certificate of Compliance .......................................... 26

Certificate of Service .................................................. 26

## **TABLE OF CITATIONS**

**Cases**

*Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*,
833 F.3d 1299, 1306 (11th Cir. 2016) ............................................. 11

*Belcher v. Metropolitan Life Ins. Co.*,
943 F.2d 51 (6th Cir. 1991)(table decision) ..................................... 14

*Bryant v. Community Bankshares, Inc.*,
265 F. Supp. 3d 1307, 1326 (M.D. Ala. 2017)................................. 20

*Dekalb County v. U.S. Dept. of Labor,*
812 F.3d 1015, 1020 (11th Cir. 2016) ............................................. 12

*Dennard v. Richards Grp., Inc.,*
681 F.2d 306, 314 (5th Cir. 1982) .................................................... 20

*\*Dixon v. Life Ins. Co. of N. Am.*,
389 F.3d 1179 (11th Cir. 2004) .................................... 3,12-19, 24-25

*Guy v. Southeastern Iron Workers' Welfare Fund,*
877 F.2d 37, 39 (11th Cir. 1989) ..................................................... 20

*HCA Health Servs. of Ga., Inc. v. Employers Health Ins.*,
240 F.3d 982, 1005 (11th Cir. 2001) ...........................................20-21

*Harris v. Pullman Standard, Inc.*,
809 F.2d 1495, 1498 (11th Cir. 1987) ............................................. 20

*In re Managed Care Litig.*,
605 F.3d 1146, 1150 (11th Cir. 2010) ............................................. 21

*Metropolitan Life Ins. Co. v. Beard,*
321 F. Supp. 3d 181, 183 (D. Mass. 2018)...................................... 14

*Metropolitan Life Ins. Co. v. Clark*,
Case No. CV 07-304, 2008 WL 11338800, at \*4

(D. Ariz. Aug. 22, 2008)...........................................................14-15

*Metropolitan Life Ins. Co. v. Kelly*,
   890 F. Supp. 746, 748 (N.D. Ill. 1995)............................................ 14

*Smith v. Continental Cas. Co.*,
   616 F. Supp. 2d 1286, 1300 (N.D. Ga. 2007)................................. 24

*Stevens v. Sun Life and Health Insurance Company,*
   Case No. 3:16-cv-76-WKW, 2017 WL 900005, *13
   (M.D. Ala. March 9, 2017) ............................................................ 21

*Wells v. Minn. Life Ins. Co.*,
   885 F.3d 885, 893-895 (5th Cir. 2018)........................................24-25

*Yochum v. Barnett Banks, Inc. Severance Pay Plan*,
   234 F.3d 541, 543 (11th Cir. 2000) ................................................ 11

## Statutes

5 U.S.C. §§ 8707 and 8708 ..................................................................... 5

5 U.S.C. § 8709...................................................................................... 4

5 U.S.C. § 8709(d)(1) ...................................................................... 14,19

5 U.S.C. § 8714...................................................................................... 5

## Regulations

5 C.F.R. § 870.102 ................................................................................ 2

## Other Authorities

H.R. Rep. No. 2579, 83rd Cong., 2d Sess. (1954), *reprinted in* 1954
U.S.C.C.A.N. 3052 ..........................................................................18-19

*Couch on Insurance*, § 254:12 (3d ed. 2014) .............................................. 25

v

## <u>STATEMENT OF JURISDICTION</u>

The District Court's federal jurisdiction over this action's subject matter arises under 28 U.S.C. § 1331 and 5 U.S.C. § 8715.  This action seeks enforcement of an insurance benefit arising through the Federal Employees Group Life Insurance ("FEGLI") program governed by 5 U.S.C. § 8701, *et seq.*

This Circuit Court's appellate jurisdiction arises pursuant to 28 U.S.C. § 1291, because this appeal is taken from a final order of the district court entered on September 10, 2024.  (Appendix ("App'x") vol. 6, Docs. 23 and 24.)  The Appellant's notice of appeal was timely filed on September 26, 2024. (App'x vol. 6, Doc. 25.)

## **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1)      Whether the district court's affirmation of MetLife's interpretation of FEGLIA's coverage terms as precluding the recovery of accidental death benefits when the insured has a pre-existing health condition is contrary to *Dixon v. Life Ins. Co. of N. Am.* and other Eleventh Circuit holdings.

2)      In accordance with the foregoing, whether the claim record in this case supports an inference that the decedent's underlying health conditions "substantially contributed" to her death.

## STATEMENT OF THE CASE

**A.    Course of Proceedings and the District Court's Disposition.**

Plaintiff/Appellant Brittany Finney ("Finney") filed this action on August 18, 2022, against Defendant/Appellee Metropolitan Life Insurance Company ("MetLife"), as the administrator for the FEGLI program for federal employees, pursuant to 5 C.F.R. § 870.102 seeking the recovery of an accidental-death benefit for her deceased mother, Selena Anderson, a former federal employee who worked for the Social Security Administration. (App'x vol. 1, Doc. 1 at p. 7.) MetLife answered Finney's complaint on September 15, 2022, denying Finney's entitlement to any relief sought. (App'x vol. 1, Doc. 5.)

After completing limited discovery, Finney and MetLife filed cross-motions for summary judgment with supporting briefs and evidentiary submissions on October 10, 2023. (App'x vols. 1-6, Docs. 11, 12, 13, 15, 16 and 18.)  The parties then filed responses and replies consistent with the district court's briefing schedule. (App'x vol. 6, Docs. 19, 20, 21 and 22.)  Neither party requested a hearing on the motions, and none was held.

The district court issued its Order and Memorandum Opinion on September 10, 2024. (App'x vol. 6, Docs. 23 and 24.) In its Memorandum Opinion, the District Court found that MetLife "had at least reasonable grounds to deny Finney's claim [for benefits] under the physical illness exclusion" in the FEGLI

contract, and did not ultimately reach the question "whether MetLife also had reasonable grounds to determine that Anderson's death didn't meet the definition of accidental death." (App'x vol. 6, Doc 23 at p. 1434.) When interpreting the FEGLI contract's physical illness exclusion, the district court elected against applying this Circuit's common law interpretation of this language in *Dixon v. Life Ins. Co. of N. Am.*, 389 F.3d 1179 (11th Cir. 2004) to mean that a pre-existing condition is not to be considered as a cause unless it "substantially contributed" to the loss, and instead applied an unreasonably rigid interpretation that this Circuit has overtly criticized for untenable results it creates. (*Id.* at pp. 1434-37.) Its reasoning for doing so was a result of a false distinction the district court drew between *Dixon* and the instant case where *Dixon* involved an ERISA plan and the instant case involved the FEGLI contract. (*Id.*)

Based on this rationale, the district court strictly construed the FEGLIA contract without applying this Circuit's "substantial contribution" analysis applicable to the FEGLI contract's physical exclusion language. (*Id.* at p. 1439.) It held that reasonable grounds supported MetLife's decision to deny benefits based on Ms. Anderson simply having certain pre-existing conditions without regard for whether those conditions "substantially contributed" to her death. (*Id.*)

The district court also alternatively held that even if the "substantial contribution" analysis was followed, the court's conclusion would remain the same

3

even though MetLife's administration of Finney's claim never employed that analysis and in particular never asked its medical resource to answer that far more searching question. (*Id.* at pp. 1439-40.) The district court's alternative holding was a de novo determination, because MetLife never engaged in that analysis at the administrative level nor issued a decision under this far less-restrictive standard. Accordingly, there was no decision applying this analysis to which the district court could properly defer.

The district court thereafter granted MetLife's motion for judgment, denied Finney's cross-motion, and in a separate order dismissed Finney's complaint with prejudice. Finney timely appealed that entry of judgment and dismissal of her complaint on September 26, 2024. (App'x vol. 6, Doc. 25.)

### B.    Statement of Facts.

MetLife, through an administrative unit entitled Office of Federal Employees Group Life Insurance, administers claims for FEGLI benefits in accordance with the Federal Employees Group Life Insurance Act ("FEGLIA"), a life insurance program made available for federal employees, and regulations and guidance issued by the United States Office of Personnel Management ("OPM") and pursuant to a contract issued by OPM to MetLife pursuant to 5 U.S.C. § 8709. (App'x vol 1, Doc. 5 at pp. 17-19(unnumbered prefatory paragraph)). Payment of FEGLI benefits is governed by FEGLIA and the regulations promulgated

4

thereunder by OPM, the FEGLI contract between OPM and MetLife, and the OPM

FEGLI Handbook. (*Id.*) Payable FEGLI claims are funded through the Employees'

Life Insurance Fund, 5 U.S.C. § 8714, held at the United States Treasury, with

amounts paid to the Fund under 5 U.S.C. §§ 8707 and 8708. (*Id.*)

Among the FEGLI benefits available to federal employees is accidental death and

dismemberment coverage.  (App'x vol. 2, at p. 295.) The terms and conditions of

this coverage are as follows:

### ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) BENEFITS

#### When Are Benefits Payable?

Accidental death and dismemberment (AD&D) benefits are payable when you sustain bodily
injury solely through violent, external, and accidental means, and as a direct result of the bodily
injury, independently of all other causes, and within one year afterwards, you lose your life, limb
(hand or foot), or eyesight.

- Loss of hand means loss by severance at or above the wrist joint, or equivalent loss, as
  determined by OFEGLI.
- Loss of foot means loss by severance at or above the ankle joint, or equivalent loss, as
  determined by OFEGLI.
- Loss of eyesight means total and permanent absence of any usable vision in one eye.

Accidental death benefits, if payable, are payable *in addition to* "regular" FEGLI benefits.

#### Exclusions

AD&D benefits will not be paid if your death or loss in any way results from, is caused by, or is
contributed to by:

- physical or mental illness;
- the diagnosis of or treatment of a physical or mental illness;
- ptomaine or bacterial infection.  However, accidental death and dismemberment benefits
  will be paid if the loss is caused by an accidentally sustained external wound;
- a war (declared or undeclared), any act of war, or any armed aggression against the
  United States, in which nuclear weapons are actually being used;
- a war (declared or undeclared), any act of war, or any armed aggression or insurrection in
  which you are in actual combat at the time bodily injury is sustained;
- suicide or attempted suicide;
- injuring yourself on purpose;
- illegal or illegally obtained drugs that you administer to yourself; or
- driving a vehicle while intoxicated, as defined by the laws of the jurisdiction in which
  you were operating the vehicle.

(*Id.*)

Selena Anderson (deceased) was a federal employee who had approximately $57,000 in FEGLI accidental death and dismemberment coverage at the time of her death. (App'x vol. 1, Doc. 1 at p. 9, ¶ 6, and Doc. 5 at p. 20, ¶ 6.) On June 24, 2021, Selena Anderson suffered a fall in a parking lot while exiting a motor vehicle, and because of that fall, suffered multiple fractures to her right leg below the knee. (App'x vol. 1, Doc. 13-1 at pp. 86-87.) Ms. Anderson was taken to the hospital after her accident, where she died six days later on June 30, 2021. (App'x vol. 1, Doc. 13-1 at pp. 85-87; *see also* App'x vol. 1, Doc. 1 at p. 9, ¶ 8, and Doc. 5 at pp. 20-21, ¶ 8.) The death certificate for Ms. Anderson identifies her cause of death to be as follows:



(App'x vol. 1, Doc. 13-1, at p. 85.) The "Supplemental Medical Certification" to which the above excerpt refers re-states the cause of death as follows:

(App'x vol. 1, Doc. 13-1 at p. 86.)  This supplemental statement clarifies the

"manner of death" in which Ms. Anderson's pulmonary thromboembolism

occurred to be the result of an "accident." An autopsy report also confirms Ms.

Anderson's cause of death "was pulmonary [sic] embolism in a patient with

underlying interstitial lung disease. The right lower extremity fractures were likely

responsible for the final event." (App'x vol. 1, Doc. 13-1 at pp. 126-127.)

After Ms. Anderson died, Finney, as Ms. Anderson's surviving daughter and

designated beneficiary, submitted a claim to MetLife for FEGLI accidental-death

proceeds in which her mother had enrolled before she died.  (App'x vol. 1, Doc. 1

at p. 9, ¶ 11; Doc. 5 at p. 21, ¶ 11; Doc. 13-1 at pp. 69-67.) On December 29, 2021,

a MetLife employee informed Finney in a telephone conversation of the potential

that Selena Anderson's medical history may have "contributed to passing" and that

her claim may not be payable as a result. (App'x vol. 1, Doc. 13-1 at p. 241.) In a

second call that same day, according to call note in the claim record, MetLife

further informed Finney "that we are going to send this to our medical dept and see

if the health conditions had anything to do with the accident and once we

7

determine we will give you a call back to advise our handling." (App'x vol. 1, Doc. 13-1 at p. 242.)

Around that same time, MetLife, as part of its consideration of her claim, engaged MES Peer Review Services ("MES") as a third-party contractor to obtain a "peer review" from Dr. Neil K. Gupta, who held himself out to be a practicing physician with a board certification in internal medicine. (App'x vol. 1. Doc. 13-1 at pp. 188-190.) In a letter dated January 7, 2022, MetLife informed of its decision to deny Finney's claim citing Ms. Anderson's "medical history" at the time of her accident as having "contributed" to her death. (App'x vol. 1, Doc. 13-1 at pp. 193-194.)  The decision letter did not refer to Dr. Gupta's review completed days earlier, nor did the letter include any instructions for the submission of an appeal or request for reconsideration. (*Id.*)

In a letter dated February 14, 2022, Finney, through counsel, appealed MetLife's denial of benefits, and at the same time, requested additional time in which to submit information in support of that appeal and requested a copy of MetLife's claim record. (App'x vol. 1, Doc. 13-1 at pp. 195-197.) MetLife permitted the submission of additional information but declined to provide Finney with a copy of its claim record that included Dr. Gupta's peer review not mentioned in its January 7, 2022, denial letter. (App'x vol. 1, Doc. 13-1, at pp. 211 and 212.)

8

On March 28, 2022, Finney completed her appeal request by providing a

peer review report obtained from forensic pathologist Dr. James R. Lauridson,

M.D. (App'x vol. 1, Doc. 13-1 at pp. 213-221.)  Dr. Lauridson opined as follows,

in relevant part:

> The medical legal certification of death properly attributes the cause of death as the event that initiates any subsequent events, usually therapeutic. This is called the proximate cause of death.
>
> In some cases, the events following the initial event may culminate in death. Even if this is the outcome, the initial event is legally the cause of death (also known as the proximate cause of death).
>
> In the case of Selina Anderson the proximate cause of death was the accident causing the fractures of her leg. The treatment of the fractures let to a series of medical complications that resulted in her death. The autopsy report from UAB Medicine lists a pulmonary thromboembolism as the cause of death. This was a complication that occurred during treatment for the fractures.

(App'x vol. 1, Doc. 13-1 at p. 214.) Following the completion of her appeal,

Finney had to follow up with MetLife three times over the next several months,

before resorting to filing this action in the face of MetLife's lack of response on

August 18, 2022.  (App'x vol. 1, Doc. 1.)

Six days after Finney filed this action, counsel for Finney received a letter

from MetLife dated August 24, 2022, informing that MetLife was affirming its

decision based on Ms. Anderson's overall physical condition at the time her

accident and subsequent death occurred. (App'x vol. 2, Doc. 13-1 at pp. 256-260.)

In denying Finney's appeal, MetLife reaffirmed its earlier policy interpretation that

Ms. Anderson's pre-existing health conditions precluded recovery because it

viewed them as additional related causes of death. (App'x vol. 2, Doc. 13-1 at p.

9

258.) MetLife also indicated in its appeal decision that Ms. Anderson's death from complications stemming from her fall and broken leg meant she did not sustain "bodily injuries solely through violent, external and accidental means, and died as a direct result of such bodily injuries independently of all other causes." (*Id.*)

### C.    Review Standard for the Issues Presented.

This Court exercises *de novo* or plenary review over the district court's grant of summary judgment, applying the same review standard as that used by the lower court.  "Summary judgment is appropriate where there is 'no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' Fed. R. Civ. P. Rule 56(a)."  *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1306 (11th Cir. 2016). *See also Yochum v. Barnett Banks, Inc. Severance Pay Plan*, 234 F.3d 541, 543 (11th Cir. 2000).

Finney's argument below addresses the district court's errors of law in its review of MetLife's interpretation of the FEGLIA contract and application of its terms. Although no Eleventh Circuit decisions involving review of a FEGLIA decision could be located, commensurate with MetLife's position before the district court below and as the district court itself proceeded in its review over the benefit determination at issue, this Court's ERISA decisions are instructive given the near-identical postures of FEGLI and ERISA benefit decisions.  Looking toward those cases for guidance here, this Court reviews *de novo* a district court's

ruling affirming or reversing an administrative benefits decision, applying the same legal standards as those that governed the district court's decision. *See Alexandra H.*, 833 F.3d at 1306 (identifying the appellate review standard in the analogous ERISA contact where a review involves a determination by a plan administrator)(citing *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011)); *cf. Dekalb County v. U.S. Dept. of Labor*, 812 F.3d 1015, 1020 (11th Cir. 2016)(applying a *de novo* review standard when reviewing an Administrative Review Board decision pursuant to the Administrative Procedures Act).[1]

## SUMMARY OF THE ARGUMENT

The question presented in this appeal is whether MetLife's interpretation of FEGLI's coverage terms to mean that *the presence alone* of preexisting health conditions precludes a recovery of an accidental death benefit is consistent with the federal common law of this Circuit pursuant to *Dixon v. Life Ins. Co. of N. Am.*, 389 F.3d 1179 (11th Cir. 2004). The district court erroneously answered that question in the affirmative, and for that reason, must be reversed.

As discussed below, the district court's refusal to overturn MetLife's denial of this accidental death benefit conflicts directly with *Dixon* where this

---

[1] Counsel cites these cases involving ERISA and the APA because counsel has been unable to locate any authorities in this or any other circuit discussing the appellate review standard applicable specifically to FEGLIA benefit decisions.

Court held that the interpretation and application of exclusion terms substantially the same as those in this case must involve an inquiry into whether such preexisting health conditions "substantially contributed" to the loss (in this instance, the insured's death).  Because MetLife never investigated or considered this "substantial contribution" test as part of its claim administration, it never undertook proving (as it must, since it seeks application of an coverage exclusion) that any of Ms. Anderson's preexisting health conditions substantially contributed to her death as *Dixon* requires. Accordingly, the district court's judgment for MetLife must be reversed because it is inconsistent with Eleventh Circuit precedent.

## ARGUMENT AND CITATIONS TO AUTHORITY

**The district court's affirmation of Metlife's interpretation of coverage terms as precluding the recovery of accidental death benefits when the insured has pre-existing health conditions is contrary to the federal common law of Eleventh Circuit law.**

MetLife's original reason for denying Finney's claim, which it subsequently reaffirmed as part of its August 24, 2022, appeal decision, was that no recovery of accidental death benefits is available under the FEGLI Policy's "physical illness" exclusion," because, it found, Selena Anderson's underlying health condition made her more susceptible to dying generally because of complications from her multiple leg fractures.  (App'x vol. 1, Doc. 13-1 at pp. 193-194; App'x vol. 2, Doc. 13-1 at p. 258.) Because it made her more susceptible to a fatal outcome, MetLife

12

considered it to be a contributing cause of death.  MetLife's reasoning depended on an untenably strict interpretation of that exclusion which the Eleventh Circuit clearly rejected in *Dixon v. Life Ins. Co. of N. Am.*, 389 F.3d 1179 (11th Cir. 2004). It then used that interpretation to avoid having to prove that any of these conditions substantially contributed to Ms. Anderson's death consistent with *Dixon's* mandate. The district court's affirmation of MetLife's erroneous contract interpretation is error that ignores the federal common law of this Circuit declared in *Dixon*.

### A.  Under Eleventh Circuit law, a pre-existing health condition or infirmity cannot be considered as an alternative cause under the policy language at issue unless it "substantially contributed" to the policyholder's death.

Interpretation of the FEGLI contract follows the same tenets as any other insurance contract and begins with the language of the contract itself.  *Belcher v. Metropolitan Life Ins. Co.*, 943 F.2d 51 (6th Cir. 1991)(table decision).  That its origins are found in the U.S. Code does not change any of these ordinary rules. Because the FEGLI contract is a creation of federal law, *see Belcher*, 943 F.2d 51 (citing 5 U.S.C. § 8709(d)(1) which provides that the terms of FEGLI coverage "shall supersede and preempt any law of any State … or any regulation thereunder … to the extent that the law or regulation is inconsistent with the contractual provisions"), federal common law logically should preside over its construction. *See generally, Metropolitan Life Ins. Co. v. Beard,* 321 F. Supp. 3d 181, 183 (D.

13

Mass. 2018)(citing decisions from the 6th and 10th circuits); *Metropolitan Life Ins. Co. v. Kelly*, 890 F. Supp. 746, 748 (N.D. Ill. 1995)(declaring in a FEGLIA benefit case, "[t]his case is a matter of federal common law…."); and *Metropolitan Life Ins. Co. v. Clark*, Case No. CV 07-304, 2008 WL 11338800, at *4 (D. Ariz. Aug. 22, 2008)("Relevant authority seems to suggest that federal caselaw should be used to decide the kind of capacity required to designate a beneficiary.").

In the Eleventh Circuit, the district court's acquiescence to MetLife's interpretation of the FEGLI contract's "physical illness" exclusion to deny coverage in this case is contrary to that federal common law.[2]  This Circuit defined that common law interpreting this coverage exclusion in *Dixon v. Life Ins. Co. of N. Am.*, 389 F.3d 1179 (11th Cir. 2004) which involved nearly identical language. In that case, the insured suffered heart failure immediately after being in a motor vehicle accident which led to his widow submitting a claim for his accidental death benefit under his group coverage which was governed by ERISA. *Dixon*, 389 F.3d

---

[2] That interpretation is not saved by the supplementation MetLife added to its reasoning responding to Finney's appeal where added a citation to the policy's coverage language requiring the insured to "have sustained bodily injuries solely through violent, external and accidental means, and within one year thereafter shall have [died] (B) as a direct result of such bodily injuries independent of all other causes…." (App'x vol. 2, Doc. 13-1 at pp. 257-258.) This is because the essence of MetLife's argument under these provisions is identical, which is that Ms. Anderson's health conditions before her accident, just by being present, are enough to defeat coverage.

at 1180.  Like the FEGLI contract in this case, her husband's coverage contained the following terms:

> We agree to pay benefits for loss from bodily injuries:
>
>> (a) caused by an accident which happens while an insured is covered by the policy; and
>>
>> (b) which, directly and from no other causes, result in a covered loss."
>
> We will not pay benefits if the loss was caused by:
>> (i)      sickness, disease or bodily infirmity; or
>>
>> (ii)     any of the Exclusions listed on page 2.

*Id.* The "Exclusions" section included the following:

> No benefits will be paid for loss resulting from: … 6. sickness, disease or bodily infirmity.

*Id.*  The insurance company denied her claim, noting at the time of the motor vehicle accident the decedent suffered from cardiovascular disease and finding that the presence of that disease was a contributing factor to his death. *Id.* at 1181.  The district court agreed with the insurance company at the summary judgment stage because this policy language "unambiguously precluded recovery 'unless the loss resulted "directly" from an accident and "from no other causes"'" where it "was undisputed" that the decedent's "underlying heart condition contributed to his death." *Id.* at 1182.

Although the Eleventh Circuit affirmed the district court's ultimate decision based on the specific facts of that case, it did so only after correcting the district

15

court on its approach to how to interpret the policy language at issue where that court found the policy language to be unambiguous and to be strictly construed. The Eleventh Circuit began its review of the district court's reasoning by identifying the issue whether such policy language may preclude recovery for an accidental injury where a preexisting medical condition is a contributing factor to the loss as being one of first impression. *Dixon*, 389 F.3d at 1183. After noting the split among the circuits on the issue, the Eleventh Circuit adopted the reasoning followed in the Fourth and Ninth Circuits that "a pre-existing infirmity or disease is not to be considered as a cause unless it substantially contributed to the disability or loss." *Id.* at 1184 (quoting *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794, 797 (4th Cir. 1990)(quoting *Colonial Life Acc. Ins. Co. v. Weartz*, 636 S.W.2d 891, 894 (Ky. Ct. App. 1982)). In eschewing the competing view taken in the Sixth and Tenth Circuits that such language should be subject to a strict interpretation as being unambiguous (the view followed by MetLife here), the Eleventh Circuit observed that the rigid approach adopted in these Circuits "would yield untenable results." *Id.* at 1184. The court explained:

> The coverage provided under the LINA policy at issue would be rendered almost meaningless if we were to adopt the strict interpretation followed by the Appellee. As the Fourth Circuit rightly pointed out, an overly strict interpretation of "directly and from no other causes" would provide insureds, or their beneficiaries, with coverage only where the insured was in perfect health at the time of the accident. The "substantially contributed" test gives this

16

exclusionary language reasonable content without unreasonably limiting coverage.

*Dixon*, 389 F.3d at 1184.

*Dixon* is dispositive in this case where MetLife premises its denial of Finney's claim based on the reasoning followed in the Sixth and Tenth Circuits which the *Dixon* Court expressly rejected.  As MetLife explained to Finney over the telephone according to a December 29, 2021 "phone slip," MetLife focused its inquiry during the claims process on an examination into whether Ms. Anderson's "health conditions had anything to do with the accident…." (App'x vol. 1, Doc. 13-1 at 242.)  When it completed that examination, MetLife informed Finney of its conclusion that Ms. Anderson's "cause of death was contributed to [by] insured's medical history which is excluded due to her physical illness." (App'x vol 1, Doc. 13-1 at p. 194.) The question MetLife should have asked during its review, but did not, is whether Ms. Anderson's other conditions "substantially contributed" to her death.  That these conditions existed and simply were part of her health profile when she died is not enough.

That *Dixon* involved interpretation of these terms within the context of an ERISA plan makes no difference, or at least logically *should not* make any difference, based on the Eleventh Circuit's reasoning in that case.  Again, the reason the Eleventh Circuit adopted the "substantially contributed to" analysis for these terms was because it found the alternative view "would yield *untenable*

17

results." *Dixon*, 389 F.3d at 1184.  Transferring that analysis to the instant

FEGLIA context is easy, because it is difficult to imagine Congress intending such

"untenable results" for the benefits it created for federal employees through its

enactment FEGLIA (the controlling statute here) when Congress' expressed goal

for FEGLIA's enactment was "to provide low-cost group life insurance to Federal

employees." H.R. Rep. No. 2579, 83rd Cong., 2d Sess. (1954), *reprinted in* 1954

U.S.C.C.A.N. 3052.  "Untenable results" do not meet that goal.

At the very least, nothing in 5 U.S.C. § 8709(d)(1), which the district court

cited in support of the opposite conclusion, remotely suggests the preemption of

federal common law governing contract interpretation.  That provision is clear only

in its preemption of "any law of any State or political subdivision thereof" relating

to FEGLI contract terms.  Note there is nothing in this statute that says *federal*

courts are relieved of their Constitutional obligation to interpret those terms, as the

district court suggests has occurred.

Therefore, the distinction drawn by the district court between *Dixon* and the

instant case is a false one.  *Dixon*  represents this Circuit's federal common law

interpretation and analysis of the physical illness exclusion at issue in this case.

*Dixon* is controlling authority to which the district court (and MetLife) must adhere

unless or until it is overturned.

18

**B.  MetLife's interpretation of FEGLI policy terms in a manner contrary to federal common law necessarily is an abuse of discretion.**

MetLife's erroneous interpretation of the FEGLI contract found by Eleventh Circuit courts to be clear and unambiguous in a manner contrary to MetLife's position is necessarily arbitrary and capricious, and therefore must be overturned based simply on that position being facially wrong.

Analogous Eleventh Circuit cases addressing administrative interpretations conflicting with clear and unambiguous terms of ERISA plans apply with equal force here where the FEGLI policy operates the same way as an ERISA plan and likewise involves an administrative determination. In an ERISA action, any interpretation that conflicts with Plan language is necessarily an unreasonable and arbitrary interpretation and therefore undeserving of deference. *HCA Health Servs. of Ga., Inc. v. Employers Health Ins.*, 240 F.3d 982, 1005 (11th Cir. 2001) (holding an ERISA administrator's "wrong interpretation [of the Plan document] … is not entitled to deference because it deprives participants of their contractual expectation"); *see also, e.g., Bryant v. Community Bankshares, Inc.*, 265 F. Supp. 3d 1307, 1326 (M.D. Ala. 2017)(holding an ERISA administrator's decisions "do not survive review under the arbitrary and capricious standard" because they "conflict with the clear, specific, and mandatory terms of the Plan….").  As the Fifth Circuit stated in *Dennard v. Richards Grp., Inc.,* a case often cited in this

19

Circuit on this subject,[3] "[a] rational and reasonable interpretation of a plan may still be arbitrary and capricious if contrary to the plain meaning of the plan." 681 F.2d 306, 314 (5th Cir. 1982).

The Eleventh Circuit's reasoning in *HCA Health Services* is sound for two reasons. First, no administrator (such as MetLife here on behalf of the FEGLI plan) can be vested with discretion to negate, ignore, or violate plain and unambiguous plan terms. *See Stevens v. Sun Life and Health Insurance Company*, Case No. 3:16-cv-76-WKW, 2017 WL 900005, *13 (M.D. Ala. March 9, 2017)(finding "[n]o deference is due" to an ERISA administrator's interpretation that conflicts with plan terms incorporating the Department of Labor's regulation governing the timely issuance of decisions on appeals). Second, the "abuse of discretion" review standard cannot save an interpretation that is erroneous as a matter of law. *In re Managed Care Litig.*, 605 F.3d 1146, 1150 (11th Cir. 2010).

For these reasons, MetLife's interpretation of the FEGLI contract in a manner contrary federal common law cannot abridge that common law just because MetLife enjoys an "arbitrary and capricious" review standard when carrying out its administrative functions. MetLife's decision is patently erroneous

---

[3]*See, e.g., Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989); *Harris v. Pullman Standard, Inc.*, 809 F.2d 1495, 1498 (11th Cir. 1987) .

based on the cases discussed above, and the District Court erred when it failed to overturn that decision.

**C.    Contrary to the district court's alternative holding, the claim record does not support an inference that any of Ms. Anderson's underlying health conditions "substantially contributed" to her death.**

Contrary to the district court's briefly stated alternative holding, the claim record does not support an inference that any of Ms. Anderson's underlying health conditions "substantially contributed" to Ms. Anderson's death. To the contrary, the <u>direct</u> evidence in the claim record which came from those who actually were with Ms. Anderson when she died and performed her autopsy unanimously establishes Ms. Anderson's cause of death to be a pulmonary embolism.  (App'x vol. 1, Doc. 13-1 at pp. 75 and 126.) The death certificate is more specific about the causal chain, indicating that the pulmonary embolism occurred because of multiple fractures sustained in an accident:

## MEDICAL CERTIFICATION

**PART I. CAUSE OF DEATH.** Enter the chain of events—diseases, injuries, or complications—that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. Enter only one cause on a line.

Approximate interval: Onset to death

| IMMEDIATE CAUSE (Final disease or condition resulting in death) | a. Pulmonary Thrombo Embolism | Unknown |
| | Due to (or as a consequence of): | |
| Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | b. Fractures Multiple | 6 days |
| | Due to (or as a consequence of): | |
| | c. Motor Vehicle Accident | 6 days |
| | Due to (or as a consequence of): | |

**PART II.** Enter other significant conditions contributing to death but not resulting in the underlying cause given in PART I.

**MANNER OF DEATH** ☐ Natural ☐ Homicide ☒ Accident ☐ Pending investigation ☐ Suicide ☐ Undetermined

| DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☐ Probably ☐ No ☒ Unknown | IF FEMALE: ☐ Not pregnant within past year ☐ Not pregnant, but pregnant 43 days to 1 year before death | ☐ Pregnant at time of death ☐ Unknown if pregnant within the past year | ☐ Not pregnant, but pregnant within 42 days of death | |
| DATE OF INJURY (Month, Day, Year) | TIME OF INJURY | PLACE OF INJURY (e.g., Decedent's home, construction site, restaurant, wooded area) | | INJURY AT WORK? ☐ Yes ☐ No |
| LOCATION OF INJURY (Street or R.F.D. No., City or Town, County, State) | | IF TRANSPORTATION INJURY, SPECIFY: ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify) | | |
| DESCRIBE HOW INJURY OCCURRED: | | AUTOPSY/TOXICOLOGY PERFORMED? Autopsy ☐ Yes ☐ No ☐ Unknown Toxicology ☐ Yes ☐ No ☐ Unknown | | WERE FINDINGS CONSIDERED? Autopsy ☐ Yes ☐ No Toxicology ☐ Yes ☐ No |

SIGNATURE OF CERTIFIER          10/15/2021

DATE SIGNED

(App'x vol. 1, Doc. 13-1 at p. 75.) As forensic pathologist Dr. James Lauridson

explained in his submission to MetLife,

> The medical legal certification of death properly attributes the cause of death as the event that initiates any subsequent events, usually therapeutic. This is called the proximate cause of death.
>
> In some cases, the events following the initial event may culminate in death. Even if this is the outcome, the initial event is legally the cause of death (also known as the proximate cause of death).
>
> In the case of Selina Anderson the proximate cause of death was the accident causing the fractures of her leg. The treatment of the fractures let to a series of medical complications that resulted in her death. The autopsy report from UAB Medicine lists a pulmonary thromboembolism as the cause of death. This was a complication that occurred during treatment for the fractures.

(App'x vol. 1, Doc. 13-1 at p. 214.) The proximate cause of Ms. Anderson's death,

therefore, was her accident where she fractured her lower leg in multiple places.

But for her accident, Ms. Anderson would not have suffered a pulmonary

embolism as a fatal complication of the surgery to repair her leg fractures..

22

The claim record includes no evidence contradicting the findings made in the autopsy report and death certificate supporting MetLife's conclusion that no benefits are due. To support its denial, MetLife relies on a reinterpretation of that clear evidence from an internist who is unable to do anything more than identify and call out Ms. Anderson's general state of health before her accident and surmise that they "likely increased the severity of her pulmonary embolism" and that when taken together they "contributed to her death." (App'x vol. 1, Doc. 13-1 at p. 189.) At most, this conclusory statement represents only a finding by MetLife's reviewer that Ms. Anderson's interstitial lung disease and COPD generally impacted Ms. Anderson's probability of experiencing a fatal pulmonary embolism, but that the extent of that impact is incapable of being quantified.  This falls well short of a finding that these pre-existing conditions *substantially* contributed to Ms. Anderson's death.   Just being a factor that may have been in play is not enough. *See Smith v. Continental Cas. Co*., 616 F. Supp. 2d 1286, 1300 (N.D. Ga. 2007)(applying *Dixon* to a disability case having similar policy language and declining to find substantial causation of disability, stating "The record shows, at most, that Smith's preexisting back problems have an unknown relationship to his disability"); *see also Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 893-895 (5th Cir. 2018)(finding that such other conditions must be "concurrent proximate causes"

for coverage to be defeated when there is a sole causation clause in an accidental death policy).

What MetLife's internist actually is saying is Ms. Anderson's imperfect health generally increased her probability of dying from her accident, and nothing more.[4]  But that same statement goes for most of the general population, except for those lucky few who are in immaculate health.  Under *Dixon*, the existence of such

---

[4] Finney understands MetLife's position in this denial of benefits to be as stated above, and not based on a finding that the advent of a complication following the accident somehow breaks the causal chain between the accident and Ms. Anderson's death. However, if MetLife were to take that position in this case, it would likewise be very clearly without merit because such an interpretation would cause coverage to become illusory.  The Fifth Circuit sharply rejected this interpretation in *Wells v. Minn. Life Ins. Co.*, cited above, explaining,

> Indeed, if accidental-death coverage could be precluded by later incidents directly related to and arising solely from the accident, one could reasonably conclude that an insured must die almost immediately after the accident in order to recovery benefits under the policy. Yet the policy is written to cover deaths that "occur within 90 days after the date of the accidental injury," a time period that appears hollow under Minnesota Life's construction. …

> In sum, we conclude that [the Plaintiff's] construction of the "sole cause" is reasonable. So accepting her construction, as we must, complications arising directly from, solely because of, and dependent upon the accidental injury may not be concurrent proximate causes of an accidental death sufficient to strip the accident of its "sole proximate cause" status.

*Wells*, 885 F.3d at 894.  Like the policy in *Wells,* the FEGLI accidental death coverage in this case outwardly acknowledges that an accident may not instantly result in death, where it provides coverage "within one year afterwards" of the accident. (App'x vol. 2, Doc. 13-1 at p. 295.)

24

other conditions generally impacting the insured's probability of sustaining a loss, be it death or disability, is not enough to preclude coverage and defeat the reasonable expectations of the insured.  There being no examination evidence either in the treatment records, the death certificate, or the autopsy report that any such conditions "substantially contributed" to Ms. Anderson's death, MetLife has not met its burden showing the FEGLI policy coverage exclusions apply, *see* 17A Steven Plitt, et al, *Couch on Insurance*, § 254:12 (3d ed. 2014)("The insurer bears the burden of proving the applicability of policy exclusions and limitations…."). Finney is entitled to receive her mother's FEGLI accidental death benefit.

## <u>CONCLUSION</u>

For the foregoing reasons, Finney respectfully requests this Court reverse and vacate the judgment of the district court and instead render judgment in Finney's favor.

/s/  *M. Clayborn Williams*

M. Clayborn Williams
Attorney for Appellant

Date: December 18, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in

Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,388 words, excluding the

parts of the brief exempted by Fed. R. App. 32(f).

/s/ *M. Clayborn Williams*
M. Clayborn Williams
Attorney for Appellant

Date: December 18, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing has been served on

all counsel of record via the Court's electronic filing system and U.S. Mail on

December 18, 2024:

T. Matthew Miller
Bradley Arant Boult Cummings LLP
One Federal Place 1819 5th Avenue N.
Birmingham, Alabama 35203
T: 205-521-8000
mmiller@bradley.com

Scott Burnett Smith
Bradley Arant Boult Cummings LLP
200 Clinton Avenue West, Suite 900
Huntsville, AL 35801
T: 256-517-5100
ssmith@bradley.com

And was filed with the Court via Federal Express pursuant to Fed. R. App.

P. 25(a)(2) on December 18, 2024, to the following address:

David J. Smith, Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St. N.W.
Atlanta, Georgia  30303


/s/  *M. Clayborn Williams*
Of Counsel

27